IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OSCAR SAMUEL CHAVARRIA MEJIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-253 (LMB/LRV) |
| | ) | |
| JEFF CRAWFORD, et al., | ) | |
| | ) | |
| Respondents. | ) | |

MEMORANDUM OPINION

Before the Court is petitioner Oscar Samuel Chavarria Mejia's ("Chavarria Mejia")

Motion to Enforce (hereinafter, "Motion"), in which he seeks enforcement of the Court's January

29, 2026 Order requiring the federal respondents to provide him with an individualized bond

hearing pursuant to 8 U.S.C. § 1226(a). Although Chavarria Mejia received a bond hearing on

February 10, 2026 in response to the Court's January 29, 2026 Order, he contends that the

Immigration Judge's decision to deny his request for release on bond was procedurally defective

and violated due process. The federal respondents have filed an opposition and Chavarria Mejia

has filed a reply.[1] For the reasons stated below, Chavarria Mejia's Motion will be granted, and

---

[1] On February 11, 2026, Chavarria Mejia filed a Status Report, informing the Court that a bond hearing was held for the petitioner, and that the bond hearing "was procedurally defective and he was not afforded due process[,]" [Dkt. No. 7] at 1-2; however, the Status Report did not request any relief from this Court. On February 12, 2026, the Court issued an Order, requiring the federal respondents to respond to petitioner's allegations. The federal respondents complied, filing an opposition on February 19, 2026. [Dkt. No. 11]. On March 18, 2026, the Court issued a subsequent Order, finding that petitioner had failed to file a reply, and had not filed for an extension of time to file a responsive pleading; and requiring petitioner to file a reply to the federal respondents' opposition by March 25, 2026. [Dkt. No. 15]. The March 18, 2026, Order also required petitioner to clarify whether any relief was being sought from the Court. Id. at 1. On March 23, 2026, petitioner in response to the Court's March 18, 2026, Order, filed a Motion to Enforce, requesting that the Court order his immediate release from detention, or in the

the federal respondents will be ordered to provide him with a new, constitutionally compliant § 1226(a) bond hearing before a new Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on a monetary bond or on conditional parole.[2] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release the noncitizen on bond or conditional parole if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8

---

alternative, order a new bond hearing be conducted with the requirements of due process. See generally, [Dkt. Nos. 17-18].

[2] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

2

C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond must always comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

## II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the February 10, 2026 bond hearing, which the federal respondents have provided to the Court. Chavarria Mejia is a native and citizen of Mexico. [Dkt. No. 1] at ¶ 39. He has resided in the United States since 2003, and on January 8, 2026, he was arrested by ICE in Roanoke, Virginia. Id. ¶¶ 40-41. On January 27, 2026, Chavarria Mejia filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Chavarria Mejia's Petition did

3

"not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 4]. On January 29, 2026, the Court entered an Order finding that Chavarria Mejia's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 5]. The Court also ordered Chavarria Mejia's prompt release from custody pending that bond hearing. Id.

On February 10, 2026, Chavarria Mejia appeared with counsel via Webex for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court. [Dkt. No. 7] at ¶ 2. Chavarria Mejia argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his steady employment history; immediate family ties to his United States citizen family, which includes his three U.S. citizen children; attendance at immigration hearings; and lack of criminal history.[3] Chavarria Mejia provided the Immigration Judge with seventeen letters of support from his partner, his three children, employers, and numerous family members and friends; documentary evidence of his thirteen-year-old son's diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD"); bank statements and proof of insurance policies; and documents proving his family's church membership. He also represented that his aunt, a lawful permanent resident, has agreed to sponsor him and ensure that he attends immigration hearings and complies with court orders; and

---

[3] Chavarria Mejia acknowledged that he has a DUI conviction in Delaware from 2005, but asserted that this was his only contact with the criminal justice system. He also explained that his driving privileges have been reinstated and that this conviction was taken off his record.

that he was working on an EOIR-42B Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. The Department of Homeland Security ("DHS") attorney argued that Chavarria Mejia should be detained pending the removal proceedings because he entered the United States without inspection in 2003, has taken no steps to normalize his status, and has no evidence of a fixed address. The DHS attorney highlighted that Chavarria Mejia had a DUI conviction in 2005, which he characterized as a "significant conviction," and asserted that petitioner lacks work authorization and has failed to pay taxes. Chavarria Mejia's counsel responded, and the Immigration Judge issued the following oral ruling:

> Unfortunately, I'm going to deny the request for bond. I do find that you have established that he is not a danger to the community, and the 2005 DUI, given that he has not had any other contact with the law since that time [sic]. However, I do find that you have not established that he is not a risk of flight. He's been living unlawfully in the country for some 22 years. He's not sought to legalize his status, but has instead, been employed illegally and not paying any taxes for some 22 years. He has been violating the employment and immigration laws of the United States for a significant period of time. His prospect of relief does not appear to be strong. He does have at least a culpable claim of hardship pertaining to his thirteen-year-old son, but the evidence submitted doesn't indicate that his condition is so severe that it would be exceptional and extremely unusual. I know that he has submitted a sponsor letter, but the sponsor only earns an income of 9800 dollars and is his 60-year-old aunt. But given that the fact that he has no work authorization and has not been paying taxes, this is a significant problem. He has no good, reliable sponsor. Under all these circumstances, the Court cannot find that he will comply with the Court's orders going forward given his two decades of violating multiple laws concerning immigration, taxes, and employment. [4]

The Immigration Judge required Chavarria Mejia to self-surrender to DHS by February 13, 2026 at 5:00 PM. According to counsel, Chavarria Mejia complied with the Immigration Judge's Order and presented himself to ICE; he has remained in detention ever since. [Dkt. No. 18] at 4. Additionally, it is unclear from the record before the Court whether Chavarria Mejia has

---

[4] This quote is taken from the audio recording of the February 10, 2026 bond hearing. It is an unofficial transcript prepared by the Court.

appealed the Immigration Judge's detention decision to the BIA; however, on March 23, 2026, Chavarria Mejia filed the pending Motion, which seeks enforcement of this Court's January 29, 2026 Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 18].

III.

Before reaching the merits of Chavarria Mejia' Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided Chavarria Mejia with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. For the reasons explained below, these arguments are rejected.

A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Chavarria Mejia's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Chavarria Mejia's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 11] at 3-6.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's

6

opinion in <u>Hatami v. Chertoff</u>, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive. <u>Hatami</u> involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. <u>Id.</u> at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." <u>Id.</u> at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." <u>Id.</u> The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] <u>only</u> the decision to deny bond under the statute." <u>Id.</u> at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. In <u>Jennings</u>, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. <u>Id.</u> at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." <u>Id.</u> at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process.[5] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

Here, Chavarria Mejia does not seek routine review of an Immigration Judge's discretionary bond determination. [Dkt. No. 18]. Rather, his challenge is constitutional in nature because he seeks enforcement of this Court's prior habeas order, which required a constitutionally adequate and legally compliant bond hearing. Id. at 1. Specifically, he contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status, the speculative nature of immigration relief, his working without authorization, and his failure to pay taxes—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing. Id. 3–4. Because "this is precisely the

_____

[5] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

type of claim that belongs in federal court," <u>Picado v. Hyde</u>, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Chavarria Mejia's Motion.

B.  <u>Section 1252(a)(2)(B)(ii)</u>

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision of whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 11] at 6–8. This argument is unpersuasive for one simple reason: Chavarria Mejia's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. <u>Accord</u> <u>Mendez Trigueros v. Guadian, et al.</u>, 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); <u>see</u> <u>also</u> <u>Miranda</u>, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

IV.

Turning to the merits of Chavarria Mejia's Motion, the Court finds that most of the facts the Immigration Judge relied upon in denying Chavarria Mejia's request for release on bond violated due process. In denying Chavarria Mejia's request, the Immigration Judge found that,

9

although petitioner established that he is not a danger to the community, he failed to establish that "he is not a risk of flight." In support of that determination, the Immigration Judge relied upon three facts that do not pass constitutional muster, and at least one of which also violates long-standing BIA jurisprudence.

First, the Immigration Judge pointed to Chavarria Mejia's unlawful status. He stated that Chavarria Mejia "has been living unlawfully in the country for some 22 years" and has "not sought to legalize his status." The Immigration Judge also speculated as to Chavarria Mejia's likelihood of success for immigration relief, finding that although petitioner has "at least a culpable claim of hardship pertaining to his thirteen-year-old son," he did not believe that Chavarria Mejia's application for Form EOIR-42B would prevail. The Immigration Judge also stated that petitioner's sponsor was not "good" or "reliable." As an initial matter, the Immigration Judge failed to explain how his prejudgment of Chavarria Mejia's immigration relief prospects informs his conclusion that petitioner presented a flight risk. Moreover, a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

BIA precedents confirm this conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him

10

on his own recognizance.  15 I. & N. Dec. 666, 666–67 (BIA 1976).  In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification."  Id. at 667.  But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding."  Id.  According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings."  Id.  Therefore, the BIA released the noncitizen on his own recognizance.  Id.  The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody."  In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Chavarria Mejia has been working in the United States without authorization.  This is problematic for two reasons.  To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Chavarria Mejia's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place."  Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026).  If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention."  Id.  Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not.  Id.  Rather, steady employment often reflects economic and residential stability and ties to the community in which the

11

noncitizen is employed.[6] In short, the link between Chavarria Mejia's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Chavarria Mejia of constitutionally sufficient process.

Third, the Immigration Judge expressed concern about Chavarria Mejia's failure to pay taxes, stating that petitioner has "been employed illegally and not paying any taxes for some 22 years." Chavarria Mejia acknowledges that this is "potentially a valid concern," but "not one related to his risk of flight."[7] [Dkt. No. 18] at 8-9. This Court agrees. The failure to pay taxes, standing alone, "does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that will reasonably ensure [petitioner's] appearance at future proceedings." Lemus Crispin v. Bondi, et al., 1:26-cv-191-LMB-WEF, slip op. at 12; accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 20260). In sum, the facts relied upon by the Immigration Judge do not provide a constitutionally sufficient basis upon which to have denied Chavarria Mejia's request for release on bond based on the conclusion that he poses a risk of flight.

## V.

For all the reasons stated above, Chavarria Mejia's Motion, [Dkt. No. 17], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal

---

[6] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

[7] During petitioner's bond hearing, Chavarria Mejia explained that he was not aware that he could pay taxes as an undocumented individual.

respondents to provide Chavarria Mejia with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 25 day of March, 2026.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge